THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LOUIS SPADAFORA, Appellant.

First Department, October 22, 1987

## APPEARANCES OF COUNSEL

*Andrew B. McGee* of counsel *(LaMattina & McGee,* attorneys), for appellant.

*Carol B. Hafer* of counsel *(Charles J. Hynes,* attorney), for respondent.

## OPINION OF THE COURT

SULLIVAN, J.

Defendant, a New York City police officer charged with having accepted money over a period of 4½ years from the operator of two Chinatown gambling locations, was convicted, after a jury trial, of one count of bribe receiving in the second degree, and sentenced to an indeterminate term of imprisonment of from 1 to 3 years. He cites as error the denial of his speedy trial motion, brought pursuant to CPL 30.30 and 210.20 (1) (g), more than nine months after his arraignment and before the People had ever answered ready for trial. The claim has merit, since, as this record makes clear, the People could not justify their failure to declare their readiness to proceed to trial within the statutory time limit. Accordingly, we reverse the conviction, grant the motion and dismiss the indictment.

CPL 30.30 provides generally that the People must be ready to proceed to trial within six months of a defendant's indictment. Certain time periods, however, are specifically excepted from the calculation of the six months. CPL 30.30 (4) (a), for example, provides for the making of pretrial motions and the exclusion of the time during which they are being considered by the court. CPL 30.30 (4) (g) excludes "periods of delay occasioned by exceptional circumstances", including, but not limited to, delay resulting from a continuance granted at the People's request "because of the unavailability of evidence material to the [P]eople's case", provided that the prosecutor "has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period" of time.

After defendant's arraignment on August 22, 1984, the case was adjourned for the making of motions. Since defendant's motions were disposed of by decision dated November 9, 1984, the time period from August 22 to November 9, 1984 is excludable, leaving seven months of delay for which the People must account. As is conceded, none of this delay is chargeable to defendant, who made no further motions, other

than his dismissal motion based on the alleged CPL 30.30 violation, and was continuously ready for trial.

The People argue that the seven-month delay is excusable under the "exceptional circumstances" allowance of CPL 30.30 (4) (g) since it was occasioned by the unavailability of a material witness, Louis Jon. In support of this position, the People point to their efforts to locate Jon, which they reasonably believed would be successful within a reasonable period of time, and specifically argue that these efforts had been vigorous, credible and steadfast. A review of the record, however, shows that this period of delay cannot be excluded under any reasonable interpretation of CPL 30.30 (4) (g).

After the court subsequently advised the parties on December 10, 1984 that the case was ready for trial, the prosecutor, on February 4, 1985, noting that "there is a witness that we have been unable to locate so far", acknowledged that the People were not ready. The case was adjourned to March 4, 1985. When the case was called on that date, the court itself put the matter over to the April Term.

On April 17, 1985, the People, citing their preference to bring a companion case to trial first, conceded that "there is an unavailable witness in this case" and requested a further adjournment. On May 29, 1985, the People again requested an adjournment because of the unavailable witness. On June 10, 1985, defendant, invoking the speedy trial rule, moved to dismiss the indictment. In opposition, the People cited the unavailability of the witness, Louis Jon, whose "whereabouts [had been] unknown" since "at least" the court's November 9, 1984 decision on defendant's pretrial motions. The People requested a hearing on the witness's unavailability and the diligence and good faith of their efforts to locate him.

Before the hearing began, some five months later, the court, on the basis of the Grand Jury minutes, determined that Jon's testimony was indeed material. The People presented two witnesses who testified about the ongoing gambling activities in the Chinatown section of Manhattan. Sidney Koe, who was closely associated with Benny Eng, said to be the overseer of the Hip Sing Association and the "Boss of Chinatown", ran a gambling operation at both 9 and 15 Pell Street. Jon had worked for Koe at those establishments. Police department intelligence indicated that Koe, who was "like a son", was Eng's right-hand man.

Sometime after July 25, 1984, the date on which he testified

before the Grand Jury in this matter, Jon had a conversation with members of the prosecutor's office. He informed them that he had told Eng of his cooperation in the investigation of the Chinatown gambling enterprises and the police corruption that went with it. He had also informed Eng that he had testified against certain police officers. Eng allegedly told Jon that, while he should not have testified against police officers, he would be "forgiven" nonetheless, but that he should leave the jurisdiction. It should be noted that an earlier informant, whose tip had sparked the Chinatown investigation, had already been murdered. In any event, Jon was last heard from on July 30, 1984.

When Jon did not appear at defendant's departmental hearing on September 11, 1984, the search to find him began. Members of Jon's family, including his brothers and sisters, as well as friends and associates and the director of security for the Off-Track Betting Corp., Jon's former employer, were interviewed. Investigators spoke to both Eng and Koe, and the leader and members of the "Flying Dragons", a Chinese youth gang, as well as the attorney who had represented Jon. A constant vigil was kept for him in Chinatown, and his accounts with Mastercard, Visa, Citibank and the New York Telephone Company monitored. Contact was made with police authorities in Boston, Miami, Saratoga, Philadelphia, the Dominican Republic and the Republic of China.

All of these efforts had proven unsuccessful, although, based on some limited activity in his accounts, there was reason to believe that Jon was still alive. No records were kept concerning the efforts to find Jon and, for that reason, specific dates and documentation concerning the investigation could not be produced. The diligence of the investigation, however, is not in dispute on this appeal.

In April or May of 1985, shortly before the case against Koe had been scheduled for trial, Koe's attorney approached the prosecutor about a possible plea bargain for his client. The prosecutor stated that he would consent to a plea of guilty to a class A misdemeanor to cover the felony charge and forego a recommendation of a jail sentence if Koe could produce Jon for the upcoming trials. While Koe's attorney gave no indication that Koe would, or could, produce Jon, the prosecutor was optimistic, nonetheless, since he knew that the offer would be communicated to Koe, who, because of his relationship to Eng, could count on Eng to produce Jon. In fact, Koe did not produce Jon and went to trial himself in November of 1985.

Jon's whereabouts continued to be unknown even at the time of the hearing. On November 13, 1985, the day before its commencement, however, a west coast informant reported that he had been contacted by Jon, who expressed a desire to return to New York as soon as the cases against Koe, defendant and the other police officers were completed. While the informant knew of Jon's general whereabouts, he did not have a "specific location" for him, although he hoped to learn more. Since arrangements had already been made with police authorities and a prosecutor's office on the west coast to bring Jon back to New York as soon as he was located, it was hoped that he would be available by January 1986.

At or about the same time a woman linked to the Hip Sing organization, and reputedly a close friend and confidante of Jon, inquired as to his whereabouts and the status of the cases against Koe, defendant, and the other police officers. The officer in charge of the investigation thought that she was making the inquiries at Jon's behest to see if it was safe for him to return. He thought that while the woman had, on several prior occasions, been unwilling to assist in the effort to locate Jon, he would be able to persuade her to cooperate. In fact, Jon never testified at defendant's trial and defendant was convicted nonetheless.

The hearing court denied defendant's motion to dismiss for lack of a speedy trial, holding that the People had exercised due diligence to locate Jon and that "[t]here is, moreover, now reason to believe that Jon can and will be found within a reasonable time." This conclusion was based, no doubt, on the information received by the investigators at or about the time of the hearing. Even if the belief in Jon's early return were justified, it would not, in our view, save the People's case, since there is no basis in this record for the holding of such a belief before the running of the six-month statutory period by which the People had to be ready.

A delay in the People's readiness for trial can be excluded from the statutory time limits under the exception provided in CPL 30.30 (4) (g) only if during the crucial time period the prosecutor exercised due diligence to obtain the unavailable evidence and reasonable grounds existed to believe that such evidence would become available in a reasonable period of time. (See, People v Daniel P., 94 AD2d 83.) Due diligence alone will not suffice. Since at no time during the seven-month period preceding the making of defendant's speedy trial motion did a reasonable basis exist to believe that Jon would

become available, the People's claim to the benefit of this statutory exception must fail.

Both the prosecutor in charge of the case and the supervisor of investigators in the Internal Affairs Division of the police department admitted that they had lost all contact with Jon and had no knowledge as to his whereabouts even before defendant's arraignment. Neither had any reason whatsoever to believe that Jon would ever be located until as late as 5 or 6 months after the court's November 9, 1984 decision on defendant's motions. Even then, the only ground for any optimism was a plea bargain offer made by the prosecutor to Koe's attorney. Absent an acceptance, and here there was none, such an offer can hardly support a contemporaneous belief that Jon's production was imminent.

That Koe's attorney was not manifestly hostile to the offer before he had the opportunity to communicate it to his client cannot provide a reasonable ground from which any inference about Koe or his willingness to produce Jon for trial could be drawn. Any sanguinity on that point could only be wishful speculation on the prosecutor's part. Furthermore, since that is no evidence that Jon was still in contact with either Koe or Eng, it would, on this record, be sheer conjecture to believe that Koe could produce Jon even had he been so inclined.

The supervisor's testimony more clearly established that during the seven-month period there was no reason to believe that Jon would ever be found. Despite the broad and varied efforts of his investigators and the cooperation of various public agencies in other jurisdictions, he had no knowledge whatsoever as to Jon's whereabouts until the day before the hearing commenced. Without reasonable grounds to believe that Jon would become available in a reasonable period, the People, who for all of that time sought adjournments of the trial, must be charged with the delay.

Nor, as the evidence at the hearing makes clear, were there reasonable grounds even during the additional five months after the making of defendant's motion to believe that Jon's appearance as a witness could be secured. Nothing new had developed in the search for him until the events of November 1985 concerning the west coast informant and the inquiry from the woman friend. These events, occurring more than one year after defendant's pretrial motions had been decided and just one day before testimony was taken at the speedy trial hearing, may not properly be considered as excusing the

People's failure to be ready for trial before defendant filed his speedy trial motion. Even if they had given rise to a reasonable expectation of securing Jon's attendance following the speedy trial hearing, they obviously could not constitute "reasonable grounds to believe" at any time from November 1984 through October of 1985 "that such evidence [would] become available." Permitting the November 1985 events to cure the preceding trial delay would be clearly antithetical to the spirit and purpose of CPL 30.30.

While the "exceptional circumstances" exception which tolls CPL 30.30's mandate is, by express provision, not limited to those examples specifically enumerated in clauses (i) [unavailable evidence] and (ii) [prosecutor's need for additional time to prepare the People's case] of paragraph (g) of subdivision (4)[1] *(see, People v Goodman,* 41 NY2d 888), the circumstances proffered here as the reason for the delay cannot be considered "exceptional". The statutory "unavailable evidence" example of "exceptional circumstances" manifests a clear indication of a legislative intent that a delay will not be considered reasonable unless a probable date of witness availability, supported by a factual basis, can be projected. *(See, People v Washington,* 43 NY2d 772.) Thus, the circumstances of this case do not fall within the undelineated "extraordinary circumstances" language which introduces CPL 30.30 (4) (g).[2]

Adoption of this argument would effectively repeal the requirements of clause (i) and violate recognized tenets of statutory construction, since procedural delay caused by the unavailability of a witness would be excused both when there was a reasonable expectation of the availability of the mate-

---

1. The People never argued, and do not now, that the case falls within the clause (ii) exception, i.e., that "the continuance is granted to allow the district attorney additional time to prepare the [P]eople's case and additional time is justified by the exceptional circumstances of the case."

2. CPL 30.30 (4) provides:

"In computing the time within which the [P]eople must be ready for trial * * * the following periods must be excluded * * *

"(g) other periods of delay occasioned by exceptional circumstances, including but not limited to, the period of delay resulting from a continuance granted at the request of a district attorney if (i) the continuance is granted because of the unavailability of evidence material to the people's case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period; or (ii) the continuance is granted to allow the district attorney additional time to prepare the people's case and additional time is justified by the exceptional circumstances of the case."

rial witness and when there was not. Had the Legislature intended such a result, it could have expressed it simply by omitting the requirement of "reasonable grounds to believe that such evidence will become available in a reasonable period". The inclusion of such requirement cannot be regarded as mere surplusage, for each and every word of a statute is to be given meaning and effect. *(See,* McKinney's Cons Laws of NY, Book 1, Statutes § 231; *Orange & Rockland Utils. v Amerada Hess Corp.,* 59 AD2d 110, 115.)

Moreover, by including within CPL 30.30 an exception in the case of an unavailable material witness where the People can establish a reasonable expectation of producing such witness, the Legislature clearly intended to exclude the situation where such an expectation could not be demonstrated. This conclusion is in accordance with the long-standing maxim of statutory construction, *expressio unius est exclusio alterius.* (McKinney's Cons Laws of NY, Book 1, Statutes § 240.)

Accordingly, the judgment of the Supreme Court, New York County (Rena K. Uviller, J., at hearing; Budd G. Goodman, J., at trial and sentence), rendered March 25, 1986, convicting defendant of bribe receiving in the second degree and sentencing him to an indeterminate term of imprisonment of from 1 to 3 years, should be reversed, on the law and on the facts, the speedy trial motion granted and the indictment dismissed.

MURPHY, P. J., KUPFERMAN, SANDLER and KASSAL, JJ., concur.

Judgment, Supreme Court, New York County, rendered on March 25, 1986, unanimously reversed, on the law and on the facts, the speedy trial motion granted and the indictment dismissed.