[615 NYS2d 346]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
FRANCISCO CELESTINO, Appellant.

First Department, July 28, 1994

## APPEARANCES OF COUNSEL

*Regan A. Shulman* of counsel *(E. Joshua Rosenkranz, Mark Gimpel* and *Howard Horowitz* on the brief), and *Stroock & Stroock & Lavan* for appellant.

*Joseph J. Dawson* of counsel *(Norman Barclay* with him on

the brief; *Robert M. Morgenthau, District Attorney* of New York County, attorney), for respondent.

## OPINION OF THE COURT

Tom, J.

On February 20, 1989, undercover Police Officer Fernando Lovera and his backup team were assigned to a "buy and bust" operation in upper Manhattan. At approximately 2:00 P.M., Officer Lovera approached the building designated as 3149 Broadway and, from a distance of approximately 50 to 60 feet, observed defendant, Juan Vargas and an unidentified black male standing and talking outside the building's entrance. Officer Lovera then saw Vargas enter the building.

Upon reaching the entrance of the building, Officer Lovera, now standing within two feet of defendant, asked him, in Spanish, for a gram of cocaine. Defendant told the officer to wait for Vargas, who reappeared a few minutes later and handed the unidentified male a tinfoil package in exchange for an unknown amount of cash. The unidentified male then left the scene.

Defendant told Vargas to give Officer Lovera what he wanted, Vargas asked the officer what he needed and Officer Lovera restated that he wanted a gram of cocaine. Vargas then proceeded inside the building and returned approximately 3 to 4 minutes later with a tinfoil package which was subsequently determined to contain 13 grains of a substance that included cocaine. Vargas exchanged the package for $40 in prerecorded "buy money".

Officer Lovera then left the area, walked approximately 3 to 5 minutes to his car, and radioed a detailed description of defendant and Vargas, as well as their location, to his backup team. Detective Stacey Bridgeman, a member of the backup team and also the designated arresting officer, proceeded to the building, recognized Vargas and placed him under arrest. After turning Vargas over to other members of the backup team, Detective Bridgeman arrested defendant less than five minutes later as he stood in front of a liquor store approximately 5 or 6 buildings away. Defendant had $101 in his possession at the time of his arrest, although the buy money was not recovered.

Officer Lovera positively identified defendant and Vargas within 20 minutes of the sale from a distance of 15 to 20 feet by way of a drive-by identification. Officer Lovera identified

the suspects a second time through a one-way mirror in the viewing room of the 26th Precinct at approximately 5:30 P.M.

Defendant did not testify at trial but offered the testimony of a friend, Vincio Hernandez, who alleged that he and defendant had stood for almost two hours in front of a restaurant and grocery store located at 3151 and 3153 Broadway, which is only a few doors down from the location of the drug buy. Hernandez maintained that he and defendant had made arrangements by phone the night before to fix Hernandez' car but after hours of discussion had concluded that it was too cold to perform the repairs. After agreeing instead to go to defendant's house for food and drinks, Hernandez claimed that he went into a nearby liquor store to buy gin and observed defendant being arrested when he emerged from the store.

Defendant was subsequently convicted of criminal sale of a controlled substance in the third degree and was sentenced, as a second felony offender, to a term of 12½ to 25 years.

On appeal, defendant argues: that the indictment should be dismissed, pursuant to CPL 30.30, as the result of excess delay in bringing him to trial; that the IAS Court erred in admitting evidence of an uncharged crime; that errors in the jury charge, which included refusing to give a missing witness instruction, improperly highlighting defendant's decision not to testify, and failing to give an alibi instruction, constituted reversible error; and that the IAS Court abused its discretion in imposing a harsh and excessive sentence for the sale of only one gram of cocaine.

With regard to defendant's CPL 30.30 claims, the People concede that 380 days passed between the date of defendant's arrest on February 20, 1989 and the date the People made their third and final pronouncement of readiness on March 7, 1990. Defendant acknowledges that of those 380 days, 166 are not chargeable to the People, leaving a total of 214 days. Thus, since the People are required to be ready within 181 days, defendant would be entitled to dismissal of the indictment if the remaining period consisted of less than 33 excludable or nonchargeable days. As the IAS Court correctly found on two separate occasions, there are more than 33 nonchargeable days and, therefore, no CPL 30.30 violation exists.

Defendant contends that the record is unclear as to the reason for the adjournment during the 22-day period from March 21, 1989 through April 12, 1989 and since the People

failed to meet their burden of proving that this period was excludable, it is chargeable.

Defendant's counsel, however, in an affirmation in support of the October 1989 CPL 30.30 motion acknowledged that: "On [March 21, 1989] motions were waived in return for voluntary discovery. The Court granted defendant's motion for an inspection of the Grand Jury minutes and a *Wade* hearing."

Thus, this period is excludable both because the People are entitled to a reasonable period to respond to discovery demands and because the court is entitled to a reasonable period to inspect the Grand Jury minutes, as the foregoing were occasioned by defendant's motion practice and were for his benefit *(see,* CPL 30.30 [4] [a]; *People v Worley,* 66 NY2d 523; *People v Brown,* 195 AD2d 310, *lv denied* 82 NY2d 891).

The People maintain that the 56-day period from August 16, 1989 through October 11, 1989 is nonchargeable as Detective Bridgeman, a necessary witness at both the hearing and trial, was off duty due to a broken leg and was unable to testify. Defendant, who does not contest the People's assertion that Detective Bridgeman was, in fact, injured, argues that because the prosecution cannot demonstrate that Detective Bridgeman's broken leg rendered her medically unavailable to testify, and absent her hospitalization or immobility, the delay resulting from Detective Bridgeman's injury is chargeable to the People.

Defendant, however, is incorrect. In *People v Goodman* (41 NY2d 888, 889), the Court of Appeals held that: "The unavailability of a principal prosecution witness, for medical reasons, is a sufficient exceptional circumstance to warrant the exclusion of the period of delay." *(See also,* CPL 30.30 [4] [g]; *People v Johnson,* 191 AD2d 709; *People v Pressley,* 115 AD2d 228.)

Defendant offers no legal support for the argument that absent hospitalization or immobility, a broken leg does not constitute an "exceptional circumstance". *(See, e.g., People v Pomales,* 159 AD2d 451, *lv denied* 76 NY2d 847 [in which time spent by a complaining witness recuperating in Florida after chemotherapy and throat surgery was held excludable].) Detective Bridgeman's broken leg injury is a sufficiently restricting injury to qualify the People's witness as medically unable to testify.

Lastly, the 21-day period from October 25, 1989 through November 15, 1989 is not chargeable to the People. While defendant is correct that a court's *sua sponte* adjournment

must be charged against the People, a review of the record of the proceedings held on October 25, 1989 reveals that the defense explicitly agreed to the adjournment, rendering that period excludable *(see, People v Liotta,* 79 NY2d 841; *People v Chapman,* 185 AD2d 892, *lv withdrawn* 80 NY2d 1025).

As a result of the foregoing, it is clear that defendant was brought to trial well within the statutory time frame set forth in CPL 30.30, as a great deal more than the aforementioned 33 days are excludable.

■ At trial, however, the IAS Court made two serious errors. First, the court allowed the People to introduce evidence of the narcotics sale to the unidentified male which immediately preceded the charged sale in this case. While evidence of the uncharged sale may have been admissible under certain exceptions set forth in *People v Molineux* (168 NY 264) and its progeny (i.e., to establish that defendant was acting in concert with Vargas and/or as evidence of defendant's identity), the court permitted two prejudicial and reversible errors in the manner in which it was introduced.

In the first instance, the evidence was introduced without a prior ruling by the IAS Court, which utterly failed to consider the evidence to be proffered or to weigh its probative value against its potential for prejudice. This was error *(People v Alvino,* 71 NY2d 233; *People v Ventimiglia,* 52 NY2d 350).

The IAS Court also committed reversible error when, despite defendant's request, it failed to instruct the jury, both at the time of its introduction and in its charge, on the limited purpose for which it may consider evidence of the uncharged crime. The Court of Appeals, in *People v Williams* (50 NY2d 996, 998), made it clear that when "evidence of uncharged sales to others is admitted in order to show the method of operation, the trial court should, when such evidence comes in and again in its charge at the end of the case, caution the jury concerning the limited purpose for which it is being admitted" *see also, People v Witherspoon,* 156 AD2d 306, *affd* 77 NY2d 95, *cert denied sub nom. Carter v New York,* 499 US 967).

Nor were the court's errors, as the People claim, harmless. Rather, defendant was substantially surprised by the admission of the evidence without any prior notice and for which no limiting instruction or charge was ever given to avoid prejudice before the jury. As set forth by the Court of Appeals in *People v Molineux (supra),* and restated in *People v Allweiss* (48 NY2d 40), it is a fundamental principal that evidence of

uncharged crimes should not be admitted for the sole purpose of demonstrating that the defendant was predisposed to commit the crime charged. The risk is that a jury, not convinced of defendant's guilt, may nevertheless find against him because his conduct generally merits punishment or because of his bad character. In the within action, the court's failure to evaluate the evidence prior to admission of the testimony of the uncharged crime, and subsequent failure to give any limiting instruction whatsoever, did not adequately protect defendant from the jury reaching such a prejudicial conclusion and, therefore, constitutes reversible error.

■ Further, the People's argument that defendant failed to preserve his objection to the admission of evidence of the uncharged crime, thereby precluding appellate review, is without merit. At the time the evidence was introduced, defense counsel objected and requested a curative instruction. The IAS Court denied that request and stated that if any such instruction were to be given, it would be during the charge. The court failed to so charge. The fact that defense counsel never provided a proposed charge did not relieve the court of its responsibility to give a curative instruction nor did it act to waive an otherwise preserved claim (see, CPL 470.05 [2]; *People v Whalen,* 59 NY2d 273).

■ In addition to the foregoing, a separate ground for reversal exists. After trial, defendant did not request a charge with respect to his decision not to testify, but the court, in the exercise of its discretion, gave the jury a lengthy "no adverse inference" instruction (see, *People v Vereen,* 45 NY2d 856). Specifically, the court charged the jury that:

"In this case, the defendant did not come forward as a witness and I charge you that the fact the defendant chose not to take the witness stand and testify in his own behalf and the fact that he did cannot be used against him. The law has given him the right in effect to say to the prosecution, prove your case against me, it is my judgment that the situation is such that I am not bound to take the witness stand and the law gives me that right and privilege.

"I charge you that the law says there is no presumption to be taken against the defendant by reason of the fact that he does not take the witness stand. This rule exists in every criminal case and it says that every defendant has this right or privilege on which he can rely and he is not compelled to take the witness stand or to offer any testimony whatever.

"By pleading not guilty, the defendant has placed in issue every material accusation contained in the indictment against him and it is the prosecution which must prove the defendant's guilt beyond a reasonable doubt and the defendant cannot be required to testify or to prove or disprove anything.

"Any accused person has a right to stand mute and the fact that he does not take the witness stand in his defense may not be considered by you as an indication of guilt, admission of guilt, evidence or inference of guilt.

"The presumption of guilt, the prosecution's burden of proving the defendant's guilt beyond a reasonable doubt has been explained to you.

"Here, the defendant, Francisco Celestino, did not come forward as a witness and I charge you that you must not allow this fact in any way to prejudice him or to consider it as an admission of guilt, evidence or inference of guilt."

While an unduly prolix no adverse inference charge tends to draw added attention to the fact that defendant failed to take the witness stand, it is not a reversible error per se. In *People v Jones* (200 AD2d 441), we affirmed defendant's conviction in a case in which a virtually identical no adverse inference charge was given to the jury.

In contrast to the foregoing instruction, the recommended no adverse inference charge set forth in 1 CJI(NY) 7.05 reads in its entirety as follows: "The defendant did not testify in this case. I charge you that the fact that he did not testify is not a factor from which any inference unfavorable to the defendant may be drawn."

However, unlike *Jones (supra),* immediately following the no adverse inference charge which, *inter alia,* needlessly drew the jury's attention to the fact that defendant did not testify, the court compounded its error by singling out defendant as the paradigm of an interested witness in its interested witness charge. Specifically, the court charged: "Obviously the defendant here, who did not testify, is an interested witness since he has a primary interest in the outcome of the trial." Defense counsel thereafter objected to the court's specific reference to defendant as an interested witness.

It is well-settled law that: "[A]ny statement of a Trial Judge which tends to deprive the defendant of the full protection of his right not to have unfavorable inferences drawn from his failure to testify in his own behalf is reversible error" *(People v Mercado,* 120 AD2d 619, 621; *People v McLucas,* 15 NY2d

167; *People v Ayala,* 173 AD2d 718). It is clear that the IAS Court's unsolicited and lengthy no adverse inference charge coupled with the court's incorrect use of defendant as an example of an interested witness deprived defendant of the full protection of his right not to have unfavorable inferences drawn from his decision not to testify and warrants reversal.

Accordingly, the judgment of the Supreme Court, New York County (James Leff, J., at hearing; Clifford Scott, J., at trial and sentence), rendered May 8, 1991, which, after a jury trial, convicted defendant Francisco Celestino of criminal sale of a controlled substance in the third degree and sentenced him, as a second felony offender, to a term of from 12½ to 25 years, is unanimously reversed, on the law, and the matter remanded for a new trial.

SULLIVAN, J. P., WALLACH and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, rendered May 8, 1991, unanimously reversed, on the law, and the matter remanded for a new trial.