OPINION OF THE COURT
Edward J. McLaughlin, J.
The decision on defendant’s present CPL 30.30 speedy trial *155 motion depends ón whether the People must be charged with 45 days for two adjournments granted because the arresting detective, Louis Roman, was declared medically unavailable to testify. The detective had injured his knee in an automobile accident and had surgery shortly before that 45-day period. The People argue that the detective’s injury and surgery constituted an exceptional circumstance under CPL 30.30 (4) (g) and that the time should be excluded. Unable to resolve this question based on the motion papers and documentary evidence submitted by the People, the motion court ordered a hearing for the People to present evidence about the detective’s medical condition and his availability to testify during that 45-day period.
Background
The People submitted three documents to establish that the detective was an unavailable witness under CPL 30.30 (4) (g). The first was the “Treating Physician’s Summary Report,” dated August 12, 2002, diagnosing the detective with a torn meniscus, declaring him unfit for limited duty, and explaining that he could not sit, walk, or climb. Second, a form document dated October 11, 2002, signed by a sergeant for a lieutenant, declared the detective medically unavailable to appear in court for another three weeks, and stated that the declaration was based on a consultation with the police surgeon assigned to monitor the detective’s condition, but did not contain any specific information about his medical condition. Finally, a document from a police surgeon, dated November 8, 2002, declared the detective medically capable of returning to full duty status from limited capacity duty.
Based on that documentary evidence, the motion court ruled that the detective was medically unavailable on August 12th and excluded an adjournment granted from August 12th to September 23rd. As noted already, the motion court ruled that the same evidence did not conclusively resolve whether adjournments from September 23rd to October 15th, and from October 15th to November 7th, should also be excluded. This court conducted a hearing to resolve that question.
Factual Findings
The detective was injured in an automobile accident on August 7, 2002. In the accident, the detective injured his knee and had surgery to repair the knee on September 18, 2002. He was not hospitalized for the surgery. During the period from injury to surgery, the detective was unable to walk, sit, or *156 drive a car. He also took pain-killer medication. After the surgery, the detective was incapacitated for several days. He was unable to do anything beyond getting to the bathroom and getting liquid to drink. During this time he took the pain-killer Vicodin.
Beginning on September 23, 2002, the detective began recuperative exercises in his home, moved around his home with the aid of crutches, and was driven for 20 minutes to a doctor’s office for medical visits. At home he watched television and read the newspaper. He said that if he had been asked to testify about defendant’s case from his home, he could have done so intelligently within two or three days after the surgery.
The detective took the pain-killers for between three and four weeks after the surgery. On a good day during this period he took four pills, while on a bad day he took six. The medication made him feel intoxicated for about one hour after ingesting them. He was not asked to state what, in his opinion, caused some days to be good while others were bad.
The longest car trip that the detective took during the two weeks after his surgery probably was about 45 minutes. He said his usual commute to work in Manhattan was between 45 and 60 minutes by automobile.
The police department placed the detective on limited duty in the middle of October. He testified that he could have come to court about two weeks after his surgery, around October 2, 2002, if someone had been able to make arrangements to get him to court.
The Law
The adjournment from September 23rd to October 15th is excludable under CPL 30.30 (4) (g). During this time the detective was at home recuperating from surgery. He was not working as a police officer in any capacity and was taking pain medication for his knee during nearly all of this time period. He took the medication between four and six times a day and the medication made him feel intoxicated for at least one hour after each dose. The detective could not testify while under the influence of powerful pain-killers. Simply stated, he was in no physical or mental condition to testify (see People v McLeod, 281 AD2d 325, 327 [1st Dept 2001] [broken wrist that required large, complicated, and cumbersome cast was “sufficiently restricting injury” that rendered the officer medically unavailable to testify]).
The court disagrees with defendant’s argument that the officer was available to testify because he could have testified at *157 home on videotape or via television to the courthouse. Putting aside the obvious facts that the detective was supposed to be resting rather than giving in-home testimony, and that other recuperating witnesses might be home with other members of the household, like a spouse or children, the People are not required to go through extraordinary efforts to make a witness available (People v Martinez, 268 AD2d 354, 355 [1st Dept 2000]). More importantly, though, even if that effort were required, the detective would have had to stop taking his medication long enough to testify without being under its influence, a situation that undoubtedly would have caused him to be in pain before, during, and even after his testimony. The speedy trial statute cannot be interpreted to inflict that kind of pain or inconvenience on a testifying witness. The detective’s willingness to testify under adverse conditions, if ordered to do so, is commendable but does not make him an available witness for purposes of CPL 30.30 (4) (g).
The adjournment from October 15 to November 7, 2002 also is excludable under CPL 30.30 (4) (g). During this time, the detective had been placed by the police department on limited capacity duty, which let him perform clerical and desk work within the precinct station house or narcotic enforcement office, but which prevented him from leaving the police facility to testify in court. The court accepts that a police officer, medically fit to work in a limited capacity in a precinct station house, might also be fit to travel from there to a courthouse to testify. Nevertheless, the court accepts that the police department may validly decide, based on the advice of a police surgeon, in consultation with an officer’s treating physician, that an officer recovering from surgery is medically fit for light clerical work within the friendly confines of the officer’s regular work office, but not medically fit enough to appear as a witness in a criminal proceeding. The number of days granted for this adjournment was reasonable under the circumstances.
The court also finds that the People exercised due diligence to secure the detective’s presence as a trial witness. Defendant argues that the opposite is true because the trial assistant did not call the detective at home to learn about his medical condition and availability to testify at trial. The court recognizes that the current procedures for communication between the District Attorney’s office and the police department prohibit an individual assistant from obtaining the home telephone number of a police officer. Rather, the assistant must communicate with the officer through the officer’s police command. *158 The trial assistant’s representations on the record and the hearing testimony establish that the assistant followed those procedures. The assistant cannot be faulted for failing to speak directly to the detective and relying, instead, on the police department’s determination that the officer was medically unavailable to testify.