■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THEODORE BLACKS, Appellant. [61 NYS3d 66]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (McKay, J.), rendered October 17, 2011, convicting him of criminal possession of a weapon in the third degree (four counts), upon a jury verdict, and imposing sentence. The appeal brings up for review an order of the same court (Dowling, J.) dated February 11, 2010, which denied those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

Ordered that the judgment is modified, on the law, by vacating the convictions of criminal possession of a weapon in the third degree under counts one, two, and three of the indictment, vacating the sentences imposed thereon, and dismissing those counts of the indictment; as so modified, the judgment is affirmed, that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials is granted, and that branch of the omnibus motion which was to suppress physical evidence is granted to the extent that all physical evidence recovered from a safe during the subject search is suppressed.

In July 2009, the defendant was indicted on, inter alia, four counts of criminal possession of a weapon in the third degree based upon the discovery of three handguns at his residence. The defendant's parole officer testified at a suppression hearing that he had decided to search the defendant's residence after the defendant was arrested for selling counterfeit DVDs on May 23, 2009, but failed to immediately disclose the arrest to the parole officer as required by the conditions of his parole. The parole officer, along with three other parole officers and at least three police officers, entered the defendant's residence,

which was his girlfriend's apartment, at approximately 7:00 a.m. on June 16, 2009. Once inside the apartment, his parole officer immediately handcuffed the defendant, who was wearing only underwear, and explained the reason for the search. While the police officers stayed with the defendant and his girlfriend, who was in an adjacent room, his parole officer, along with the other parole officers, conducted a search of a bedroom that contained men's clothing. Within the bedroom they discovered counterfeit DVDs and a DVD maker, and a black fanny pack containing the defendant's identification and a .22 caliber revolver. The officers also found a "cardboard box filled with daggers."

After discovering the revolver, the parole officers searched a second bedroom, in which they found both men's and women's clothing. Inside an armoire, which contained only men's clothing, one of the parole officers discovered a small black safe. One of the police officers at the scene asked the defendant for the combination to the safe, which he provided. Inside the safe were two additional handguns, both of which were loaded. The defendant was then arrested, and, after being advised of his Miranda rights at the police station (see Miranda v Arizona, 384 US 436 [1966]), waived his rights and made a statement alleging that all three handguns belonged to his girlfriend's mother.

The defendant was charged with, among other things, criminal possession of the three handguns found in his girlfriend's apartment (see Penal Law § 265.02 [1]), as well as a fourth count of criminal possession of a weapon in the third degree, based upon his possession of "three or more firearms" (Penal Law § 265.02 [5] [i]). The defendant moved to suppress the physical evidence recovered during the search of the apartment, as well as the statements he made to law enforcement officials.

At the suppression hearing, defense counsel contended, inter alia, that the court must suppress the defendant's statement as to the combination to the safe, which was made before the officers had advised him of his Miranda rights, as well as the physical evidence obtained as a result of that statement. In a decision and order dated February 11, 2010, the Supreme Court denied the defendant's motion to suppress the handguns and the statements he made to police.

After trial, the defendant was convicted of the four counts of criminal possession of a weapon in the third degree.

"The Miranda rule protects the privilege against self-incrimination and, because the privilege applies only when an

accused is compelled to testify, the safeguards required by *Miranda* are not triggered unless a suspect is subject to custodial interrogation" (*People v Paulman*, 5 NY3d 122, 129 [2005] [internal quotation marks omitted]). "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (*id.* at 129). "The term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response" (*id.*).

Here, the defendant, who was in handcuffs and surrounded by numerous police officers when questioned about the combination to the safe, was subjected to custodial interrogation (*see People v Perry*, 97 AD3d 447, 448 [2012]). Further, the People implicitly concede that the defendant's statement disclosing the combination to the safe was testimonial in nature. The People's sole contention regarding this statement by the defendant is that the officers were not required to advise the defendant of his *Miranda* rights prior to the police officer's question about the combination to the safe because the officer could not have known that the question was reasonably likely to elicit an incriminating response. This contention is without merit. The question—which arose after the parole officers had found counterfeit DVDs, a box filled with daggers, and a .22 caliber revolver—had only one logical purpose: to elicit a response from the defendant disclosing the combination to the safe, which would possibly lead to the discovery of incriminating evidence, and which would link the safe to the defendant (*cf. People v Powell*, 125 AD3d 1010, 1011 [2015], *affd* 27 NY3d 523 [2016]; *People v Williams*, 97 AD3d 769, 769-770 [2012]; *People v Chambers*, 184 AD2d 716, 717 [1992]). Therefore, the Supreme Court should have granted that branch of the defendant's motion which was to suppress his statement to law enforcement officials as to the combination to the safe, and should have suppressed the two handguns recovered from the safe, as well as a handwritten statement the defendant later made to the police about the handguns, as fruits of the poisonous tree (*see Wong Sun v United States*, 371 US 471, 485-486 [1963]). Without this evidence, there could not be legally sufficient evidence to support convictions of criminal possession of a weapon in the third degree based on those two handguns, or based on the defendant's possession of three or more firearms. Accordingly, the convictions of those three offenses must be vacated, and those three counts of the indictment must be dismissed.

However, the Supreme Court correctly denied the defendant's motion to dismiss the indictment pursuant to CPL 30.30. "CPL 30.30 (1) (a) mandates that the People be ready for the trial of a felony within six months . . . from the commencement of the criminal action. Failure to be ready within six months will result in dismissal of the indictment unless the prosecution can show that certain time periods should be excluded" (*People v Chavis*, 91 NY2d 500, 504-505 [1998]). However, "periods of delay occasioned by exceptional circumstances" are excludable if, inter alia, "the continuance is granted because of the unavailability of evidence material to the people's case, when the district attorney has exercised due diligence to obtain such evidence and there are reasonable grounds to believe that such evidence will become available in a reasonable period" (CPL 30.30 [4] [g] [i]).

"There is no precise definition of what constitutes an exceptional circumstance under CPL 30.30 (4) (g)," as the legislature "could not anticipate every situation that might warrant tolling of the speedy trial time period" (*People v Smietana*, 98 NY2d 336, 341 [2002]). However, "[t]he unavailability of a prosecution witness may be a sufficient justification for delay provided that the People attempted with due diligence to make the witness available" (*People v Zirpola*, 57 NY2d 706, 708 [1982] [citation omitted]).

Here, the People met their burden under CPL 30.30 (4) (g) by demonstrating that the testimony of the defendant's parole officer and one of the other parole officers who conducted the search of the defendant's residence was evidence that was material to the People's case. The People also demonstrated that the officers were unavailable to testify through the submission of a letter from the Director of Human Resource Management of the New York State Division of Parole. That letter stated that the other parole officer sustained a serious gunshot wound inflicted by a perpetrator during a work-related incident, while the defendant's parole officer had responded and disarmed the perpetrator. As a result, the other parole officer remained out of work from April 2010 through February 2011, and the defendant's parole officer, who experienced "physical and emotional trauma" as a result of the incident, remained out of work until January 6, 2011.

As such, the Supreme Court properly excluded the 143-day period between August 16, 2010, and January 6, 2011, during which the People answered not ready due to the parole officers' unavailability (*see People v Goodman*, 41 NY2d 888, 889 [1977]; *People v Bullock*, 136 AD3d 518, 519 [2016]; *People v Lindsey*,

52 AD3d 527, 530 [2008]; *People v Sinanaj*, 291 AD2d 513 [2002]; *People v Womack*, 229 AD2d 304 [1996], *affd* 90 NY2d 974 [1997]; *People v Ali*, 209 AD2d 227 [1994]; *People v Celestino*, 201 AD2d 91, 95 [1994]).

The defendant's additional contentions that the Supreme Court should have charged the People with the time periods from May 24, 2010, to June 10, 2010, from June 10, 2010, to June 21, 2010, and from June 21, 2010, to August 16, 2010, are unpreserved for appellate review, and, in any event, without merit (*see* CPL 30.30 [4] [b]; *People v Goode*, 87 NY2d 1045, 1047 [1996]).

Finally, contrary to the defendant's contention, the Supreme Court correctly determined that the initial search of the defendant's residence conducted by the parole officers was lawful, as the *search* was rationally and reasonably related to the performance of the parole officer's duty (*see People v Huntley*, 43 NY2d 175, 181 [1977]; *see also Samson v California*, 547 US 843, 857 [2006]). Dillon, J.P., Austin, Roman and Cohen, JJ., concur.