People v R.G. (2025 NY Slip Op 50296(U))

[*1]

People v R.G.

2025 NY Slip Op 50296(U)

Decided on March 4, 2025

Supreme Court, Kings County

Quiñones, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 4, 2025
Supreme Court, Kings County

The People of the State of New York

against
R.G., Defendant.

Indictment No. XXXXX

André G. Travieso, New York, NY, for the defendant.
Eric Gonzalez, District Attorney, Brooklyn, NY (Kathleen Conlon Assistant District Attorney), for the People.

Joanne D. Quiñones, J.

The defendant is charged in the instant indictment with Arson in the Third Degree and other related charges in connection with an incident alleged to have occurred on December 28, 2022. By motion served and filed on January 13, 2025, the defendant moves to dismiss the indictment pursuant to Criminal Procedure Law (CPL) section 30.30. The People served and filed opposition on January 28, 2025.
Parties' Contentions
The defense submits that 621 days have elapsed between the filing of the criminal court complaint and the instant motion and that "282 of those days are clearly chargeable to the People," which is beyond the statutorily allotted speedy-trial time (see Def Aff ¶19).
At issue here is a six-month period of delay resulting from the unavailability of a prosecution witness — Fire Marshal (FM) G. — due to medical leave. The defense argues that the People have not met their burden of showing that this six-month period of delay qualifies as an exceptional circumstance (see id. ¶¶ 16-18). Specifically, the defense contends that the People have failed to establish their "due diligence efforts to get detailed information or facts about the fire marshal's medical condition and why he is unable to testify" (see id. ¶¶ 17-18).
The People contend that they are chargeable with "at most 110 days" (see People's Aff ¶ 36). They argue that FM G.'s unavailability as a result of being "medically unfit to serve as a full duty fire marshal" qualifies as an excludable exceptional circumstance pursuant to CPL section 30.30(4)(g) (see People's Memo at 8). They submit that FM G.'s testimony is material to the hearing pending before the court, that they have exercised due diligence in attempting to obtain [*2]his testimony, and that there are reasonable grounds to believe he will be available in a reasonable period (see id. at 8-11).

Analysis
Where a defendant is charged with a felony, a motion to dismiss must be granted if the People are not ready for trial within six months of the commencement of the criminal action (CPL § 30.30[1][a]). "Whether the People have satisfied this obligation is determined by computing the time elapsed between the filing of the first accusatory instrument and the People's declaration of readiness, subtracting any periods of delay that are excludable under the terms of the statute and then adding to the result any post-readiness periods of delay that are actually attributable to the People and are ineligible for exclusion" (People v Cortes, 80 NY2d 201, 208 [1992]). The defense has the initial burden of showing through sworn allegations of fact, that there has been an inexcusable delay beyond the time allotted by the statute. Once the defense has made that showing, the People bear the burden of demonstrating sufficient excludable time to withstand a motion to dismiss (see People v Santos, 68 NY2d 859, 861 [1986]; People v Berkowitz, 50 NY2d 333, 349 [1980]).
"A criminal action is commenced by the filing of an accusatory instrument against a defendant in criminal court" (CPL § 1.20[17]; see also CPL § 100.05; People v Lomax, 50 NY2d 351, 356 [1980]). Here, a criminal complaint was filed on May 3, 2023. As such, this case commenced on May 3, 2023, and the People had six months, or in this case 184 days, in which to announce their readiness for trial.
Based on a review of the official court file and the submissions of the parties, the court finds as follows:
May 3, 2023 — July 17, 2023 (75 days chargeable)
On May 3, 2023, the felony complaint was filed against the defendant and the defendant was arraigned in Criminal Court. The matter was adjourned to July 17, 2023, in Part AP1F for grand jury action. 
An adjournment for grand jury action is chargeable to the People (see People v Anderson, 252 AD2d 399 [1st Dept 1998]; People v Babcock, 86 AD2d 979 [4th Dept 1982]).
July 17, 2023 — August 21, 2023 (35 days chargeable)
On July 17, 2023, there was no grand jury action and the matter was adjourned to September 18, 2023, in AP1F for grand jury action. 
On July 28, 2023, the People filed an indictment in this matter and the case was transferred to Supreme Court for arraignment on the indictment. 
This entire period is chargeable to the People (see People v Lisene, 201 AD3d 738, 740 [2d Dept 2022] [period between commencement of the action until the defendant's arraignment on the indictment chargeable to the People]; People v Brown, 207 AD2d 556, 557 [2d Dept 1994] [period from date felony complaint was filed to date the defendant was arraigned on the indictment is chargeable to the People]).
August 21, 2023 — September 1, 2023 (0 days chargeable)
On August 21, 2023, defense counsel filed with the court a letter asking that the defendant's "appearance be waived" and requesting that the defendant's arraignment be "rescheduled for September 1st, 2023." The matter was adjourned to September 1, 2023 in TAP 2 for arraignment.
This period is excludable as an adjournment made at the request of or with the consent of defense counsel (see CPL § 30.30[4][b]; People v Martinez, 186 AD3d 1530, 1531 [2d Dept 2020] ["delays occasioned by adjournments at the request of or with the consent of the defense" are excludable under CPL § 30.30(4)(b)]).
September 1, 2023 — November 14, 2023 (0 days chargeable)
On September 1, 2023, the defendant was arraigned on the indictment in TAP 2 and requested an inspection of the grand jury minutes. On that date, the People consented to "Dunaway, Huntley" hearings (see 9/1/23 tr at 2). The matter was then adjourned to November 14, 2023 in TAP 2, for discovery and the court's decision on the sufficiency of the grand jury minutes.
On October 11, 2023, the People filed and served a certificate of compliance (COC) together with a statement of readiness (SOR).
On November 13, 2023, the court issued its decision on the defendant's motion to inspect the grand jury minutes.
This period is excludable as a period during which a pretrial motion, such as a motion to inspect the grand jury minutes, is under consideration by the court (see CPL § 30.30[4][a]; People v Lopez, 49 AD3d 899 [2d Dept 2008] [court properly excluded from the time chargeable to the People the period in which the court was reviewing the grand jury minutes]).
The period from October 11, 2023 to November 14, 2023 is also excludable as the People's act in filing and serving a COC and SOR on October 11, 2023 tolled the speedy trial clock (see People v Labate, 42 NY3d 184, 190 [2024] [People may toll the speedy trial clock by declaring ready for trial]; People v Stirrup, 91 NY2d 434, 440 [1998] ["a notice of readiness is the kind of record commitment to proceed which satisfies the People's duty to be ready for trial, and serves to toll the 'speedy trial clock' "]).
November 14, 2023 — December 19, 2023 (0 days chargeable)
On November 14, 2023, neither the defendant nor defense counsel appeared. The court noted that defense counsel had submitted a letter advising that he was unable to appear and requesting an adjournment to December 19, 2023. The matter was adjourned to December 19, 2023, in Part 9 for the defense COC and a pre-hearing/trial conference.
This period is excludable as an adjournment made at the request of or with the consent of defense counsel (see CPL § 30.30[4][b]; Martinez, 186 AD3d at 1531).
This period is also excludable as the People had previously declared their readiness for trial (see Cortes, 80 NY2d at 214 [People not required to repeatedly announce their readiness for trial throughout the pendency of a criminal action]).
December 19, 2023 — January 16, 2024 (0 days chargeable)
On December 19, 2023, the assigned assistant and the defendant appeared, but defense counsel filed an affirmation of engagement indicating that he was unable to appear and requesting an adjournment "to a date in the third week in January." The matter was adjourned to January 16, 2024, for defense counsel to appear, for defense COC, and to select hearing and trial dates.
On January 15, 2024, defense counsel filed and served the defense COC.
This period is excludable as an adjournment at the request of defense counsel (see CPL § 30.30[4][b]; Martinez, 186 AD3d at 1531).
[*3]January 16, 2024 — March 19, 2024 (0 days chargeable)
On January 16, 2024, defense counsel was again unable to appear. By letter dated January 15, 2024, defense counsel advised of the reason for his inability to appear and requested that the "matter be administratively adjourned to a mid-March date." The matter was adjourned to March 19, 2024, for defense counsel to appear and to select hearing and trial dates.
This period is excludable as an adjournment at the request of the defense counsel (see CPL § 30.30[4][b]; Martinez, 186 AD3d at 1531).
March 19, 2024 — April 23, 2024 (0 days chargeable)
On March 19, 2024, after requesting and being granted an opportunity to approach for a bench conference, defense counsel consented to an adjournment until April 23, 2024, for "control."
This period is excludable as an adjournment granted with the consent of defense counsel (see CPL § 30.30[4][b]; Martinez, 186 AD3d at 1531).
April 23, 2024 — May 14, 2024 (0 days chargeable)
On April 23, 2024, defense counsel withdrew from the case and the defendant informed the court that he wished to retain private counsel. The matter was adjourned to May 14, 2024, for the defendant to retain private counsel.
This adjournment is excludable as a period during which the defendant is without counsel through no fault of the court (see CPL § 30.30[4][f]; People v Drake, 205 AD2d 996, 997 [3d Dept 1994] [holding that an adjournment at the defendant's request to obtain counsel is excludable]).
May 14, 2024 — June 11, 2024 (0 days chargeable)
On May 14, 2024, the defendant appeared without counsel. This matter was adjourned to June 11, 2024, to afford the defendant additional time to retain private counsel.
This period is excludable as a period during which the defendant is without counsel through no fault of the court (see CPL § 30.30[4][f]; Drake, 205 AD2d at 997).
June 11, 2024 — July 16, 2024 (0 days chargeable)
On June 11, 2024, the defendant appeared with retained private counsel and the matter was adjourned to July 16, 2024, for hearings. 
This period is excludable as the People had previously declared their readiness for trial (see Cortes, 80 NY2d at 214).
July 16, 2024 — January 14, 2025 (181 days chargeable)
On July 16, 2024, the date the matter was scheduled for pre-trial hearings, the People made the following record:
The probable cause is really based on the search warrants, and that's why my argument is that only a Huntley should be conducted today, because the probable cause is from the property that was recovered from the defendant's house that was pursuant to a search warrant that was already litigated. I am under the understanding that Defense counsel might file a motion to controvert the search warrant, but I don't believe that the Dunaway portion should be litigated
(see 7/16/24 tr at 2-3). Notably, the defendant was not granted a Mapp hearing for the recovery of any property seized from him or his home. Rather, on September 1, 2023, nine months prior [*4]to the date the hearings commenced, Huntley/Dunaway hearings were ordered, on consent of the prosecution, with respect to a statement the defendant purportedly made and which the defendant sought to suppress on Huntley (involuntary statement) and Dunaway (fruit of an unlawful arrest) grounds. Accordingly, the undersigned advised that it was prepared to go forward with Huntley/Dunaway hearings as were ordered in September 2023 (see id. at 3).
The People then advised that they had only one witness — Lieutenant (Lt.) V.M. — and that "the other witness who is needed for the Dunaway portion is Fire Marshal [G.], who as of yesterday is now on medical leave" (see 7/16/24 tr at 3). The assigned assistant further advised that she contacted the FDNY and there is no return date for the marshal, so she doesn't know when he's going to be available (see id. at 3, 47-48; see People's Exhibit 2).
The hearing commenced and the People called Lt. V.M. as a witness. Once Lt. V.M.'s testimony was concluded, the matter was adjourned to August 5, 2024 for the People to provide additional information as to the status of the fire marshal (see 7/16/24 tr at 48). 
In the six-month period from July 16, 2024 to January 14, 2025, the matter was adjourned six times due to FM G.'s unavailability. On August 5, 2024, the People advised the court that the FDNY medical desk informed her that FM G. "is out for at least the next three weeks. They anticipate that he will be back after that" (8/5/24 tr at 2). When asked by the court whether FDNY indicated what kind of injury or medical condition was keeping the fire marshal out, the assigned assistant responded that she did not ask due to HIPAA, but "it's something very serious since he's been out since the middle of July" (8/5/24 tr at 2-3). The matter was then adjourned to September 4, 2024, for continued hearing.
On September 4, 2024, the People indicated they "are not ready, pursuant to CPL 30.30(4)(g), Fire Marshal [G.] is still out on medical leave" (9/4/24 tr at 2). The People further advised that they were informed by the fire marshal's supervisor that FM G. "will be out for the foreseeable future" and there was "no return date" (see id. at 2). The People asked if they "could have a month" to get more information as to when the fire marshal would be back on full duty. The matter was adjourned to October 15, 2024, for continued hearing.
On October 15, 2024, the People answered not ready for the hearing and informed the court that FM G. "returned to light duty as of early October," but "is still not clear to come to testify" (10/15/24 tr at 2). The People further advised that the FDNY refused to provide any additional information, and so the People submitted a subpoena for the court's signature (see id.; see also People's Exhibit 6). The People requested "two to three weeks," and the matter was adjourned to November 14, 2024, for continued hearing (id. at 3).
On November 14, 2024, the People answered "not ready pursuant to CPL 30.30(4)(g). Fire Marshal [G.] is still on light duty" (11/14/24 tr at 2). The People then requested an adjournment of two weeks, which the court noted was Thanksgiving Day (id. at 3). The People then requested November 26, 2024, and the matter was ultimately adjourned to December 18, 2024, for the continued hearing (id. at 3).
On December 18, 2024, the People again answered "not ready pursuant to CPL 30.30(4)(g)" (12/18/24 tr at 2). The People further advised that, as per a letter from the FDNY dated December 9, 2024, FM G. "has been unfit to serve as a fire marshal since August 20th of 2024, and he continued not to be able to testify in this case" (id. at 2; see People's Exhibit 7). This matter was adjourned to January 14, 2025, for the continued hearing.
On January 13, 2025, the defendant filed the instant motion to dismiss on speedy trial grounds.
On January 14, 2025, the People again answered "not ready pursuant to CPL 30.30(4)(g)" and a motion schedule was set directing the People to file a response to the defendant's speedy trial application by January 28, 2025 (see 1/14/25 tr at 2-3).
The People filed opposition papers on January 28, 2025. In their response, the People aver that on January 27, 2025, they were informed by an FDNY Deputy Commissioner that "FM [G.] is no longer on light duty and is currently on full medical leave" (see People's Aff ¶ 34). The People annex a letter from the Deputy Commissioner dated January 27, 2025, stating that from "August 20, 2024 to present, January 27, 2025, Fire Marshal G. has been medically unfit to serve as a full duty Fire Marshal" and that because of HIPAA laws, no further information concerning his medical status can be shared (see People's Exhibit 8; see also People's Aff ¶ 35). The letter further states that "[a]s a result, Fire Marshal [G.] has not been able to testify" in the defendant's case (see People's Exhibit 8).
The People argue that Fire Marshal G.'s "temporary unavailability" "due to illness" qualifies as an exceptional circumstance thereby rendering the entire period from July 16, 2024 through January 14, 2025 excludable pursuant to CPL section 30.30(4)(g) (see People's Memo at 8-11).
CPL section 30.30(4)(g) provides for the exclusion from speedy trial calculations a period of delay occasioned by "exceptional circumstances." While the statute does not expressly define what constitutes an "exceptional circumstance," courts have held that the unavailability of a prosecution witness may constitute sufficient justification for the delay (People v Zirpola, 57 NY2d 706, 708 [1982]). In order to qualify a witness' unavailability as an exceptional circumstance, the prosecution must establish three prongs: 1) that the witness is material; 2) that the prosecution has exercised due diligence to secure the witness' presence; and 3) that there are reasonable grounds to believe that the evidence will become available in a reasonable period of time (see CPL § 30.30[4][g][i]; see also People v Womack, 229 AD2d 304, 304 [1st Dept 1996] [43 days of arresting officer's unavailability due to maternity leave were excludable as an exceptional circumstance where People "establish[ed] that the officer was an unavailable material witness, whom they reasonably believed would become available soon, and whom they were diligent in attempting to produce at trial"]).
Contrary to the defendant's contention, the People have shown that FM G. is unavailable due to medical leave (see People v Blacks, 153 AD3d 720, 723 [2d Dept 2017] [People's submission of letter from the Director of Human Resource Management of the NYS Department of Parole was sufficient to show that the officers were unavailable to testify]; People v Alcequier, 15 AD3d 162, 163 [1st Dept 2005] ["[t]he unrefuted representation of the People constitutes sufficient proof of the medical unavailability of a prosecution witness"]; People v Veras, 48 Misc 3d 1227[A], *4 [Crim Ct, Bronx County 2015] ["The People's representations, in conjunction with the Police Surgeon's letter, establish that [the officer] was unavailable due to a medical condition"). Here, the representations made by the People on the record, along with the email correspondence from FM G. and the FDNY court desk and the letter correspondence from the FDNY Deputy Commissioner, sufficiently substantiate that FM G. is on medical leave and not available to testify (see People's Exhibits 2-4, 7-8).
To be sure, "[t]he unavailability of a principal prosecution witness, for medical reasons, is a sufficient exceptional circumstance to warrant the exclusion of the period of delay" (see People v Goodman, 41 NY2d 888, 889 [1977] [emphasis added]). The People, however, must establish that FM G. is a principal prosecution witness whose testimony is material.
Material evidence is "evidence that is 'probative of a fact in issue' " (Veras, 48 Misc 3d 1227[A], *4). "To determine whether evidence is 'material,' a court must examine all the relevant facts and circumstances of the particular case" (id.). Here, the People concede that Lt. V.M. responded to the fire, was on scene for the defendant's arrest, and was present for the entirety of the statement that is the subject of the hearing before the court (People's Memo at 8). Nevertheless, they contend that FM G.'s testimony is material to the Dunaway portion of the hearing because he was the lead investigator on the case, he downloaded the surveillance videos which depicted the defendant parking a vehicle registered to his wife and entering and exiting a building adjacent to the crime scene at the approximate time of the crime, and he retrieved LPR hits for the defendant's wife's vehicle on the date and approximate time of the crime (id. at 9). Additionally, the People submit that it was FM G. who determined that [the incident location] was owned by the defendant's uncle and that a bank debt associated with that location had recently been purchased by a limited liability company (id.).
Notwithstanding the People's representations, the criminal court complaint filed in this action reads in pertinent part, "The deponent [Fire Marshal V.M.] states that the deponent reviewed surveillance video which depicts defendant enter the building adjacent to [the incident location], exit the building adjacent to [the incident location] approximately 13 minutes later, and drive away." Further, in his grand jury testimony on July 24, 2023, Lt. V.M. identifies himself as the lead investigator. Additionally, in response to an email from the assigned assistant confirming FM G.'s availability for the July 16, 2024 hearing date, FM G. writes, "Not sure if you need [V.M.]. He was originally assigned. He did the origin and cause" (see People's Exhibit 1). In a subsequent email to the assigned assistant dated August 28, 2024, FM G. confirms he is still off duty and writes, "I believe [V.M.] can cover whatever is needed" (see People's Exhibit 4). In light of these representations and the People's concession that Lt. V.M. was on scene for the defendant's arrest and was present when the defendant made the noticed statement, it is arguable that FM G. is not a necessary witness for the Huntley/Dunaway hearing that has been pending before this court since July 16, 2024 (see People v Chavis, 91 NY2d 500, 505 [1988] ["A hearing usually determines narrow issues of the admissibility of evidence at the subsequent trial and does not involve the same witnesses as will be used at trial," thus an essential witness at trial may not be a necessary witness at a pre-trial suppression hearing]; cf. Womack, 229 AD2d at 304 [officer whose testimony was critical in establishing the chain of custody of crucial physical evidence was a material and necessary witness]; Veras, 48 Misc 3d 1227[A], *4 [IDTU technician assigned to matter was a necessary and material witness]; but cf. People v SF, 63 Misc 3d 198, 202 ["Notwithstanding the defendant's speculative assertion that other witnesses might have made similar observations or overheard the defendant's admission, the Court finds Officer Ventura is a necessary witness who possesses material evidence"]; People v Rodriguez, 8 Misc 3d 1013[A], *3 [Sup Ct, Bronx County 2005] [where testimony of unavailable officer was material, "People are entitled to receive the benefit of the exclusion under CPL § 30.30(4)(g) even if some other witnesses could provide similar testimony"]).
With respect to the second prong, due diligence is shown when the People set forth efforts to ascertain the availability of the witness and provide updates to the court (see People v Womack, 229 AD2d 304 [1st Dept 1996]; People v Veras, 48 Misc 3d 1227[A], *4 [Crim Ct, Bronx County 2015]). Here, the email and letter correspondence annexed as exhibits to the People's response demonstrate their due diligence in trying to secure FM G.'s testimony (see People v Luperon, 196 Misc 2d 154, 157-158 [Sup Ct, NY County 2003] [trial assistant's communications with the police officer's command as to the officer's medical unavailability constituted due diligence]). Moreover, the People's issuance of a subpoena directed to FM G. to appear in person in Kings County Supreme Court on October 15 and a subpoena duces tecum directed to the FDNY Records Unit requesting "all medical records and reason for medical leave" for FM G. from July 2024 to the present is a further indication of the due diligence they exercised in trying to secure FM G.'s testimony (see People's Exhibits 5-6). As such, the People have met the due diligence prong of the exceptional circumstance exception.
Turning finally to the requirement that there exist "reasonable grounds to believe that [the] evidence will become available in a reasonable period" of time, the People fall short. Here, the People had no detailed information regarding the nature of FM G.'s illness or the basis for his medical leave. More significantly, they were repeatedly advised that there was "no return date" for FM G.'s medical leave and that "he will be out for the foreseeable future" (see People's Exhibits 2-3; 7/16/24 tr at 3, 47-48; 9/4/24 tr at 2). Further, even when FM G. returned to "light duty" work in early 2024, he was still not cleared to come testify in court (see 10/15/24 tr at 2). That FM G. would not be available to testify in a reasonable period is further evinced by the fact that on January 27, 2025, the People were informed that the fire marshal was no longer on light duty and was once again on "full medical leave" (see People's Aff ¶ 34). As such, the People had no reasonable grounds to believe that FM G. would be available to testify in a reasonable period (see People v Spadafora, 131 AD2d 40 [1st Dept 1987] [finding no reasonable grounds to believe witness would be available in a reasonable period where the prosecutor did not have a return date for the witness]; People v Aquino, 189 Misc 2d 572, 576 [finding no reasonable grounds where the People provided no indication of when any of the five officers out on emergency duty would be available for trial] [Crim Ct, NY County 2001]). The People have thus failed to establish the excludability of this period as an exceptional circumstance pursuant to CPL section 30.30(4)(g).
With respect to the People's specific adjournment requests during this six-month period, generally, in a post-readiness posture, the People are only charged with their specific request (see People v Labate, 42 NY3d 184, 190 [2024] ["when the People request an adjournment to a specific date, the requested time is ordinarily charged to the People, and time beyond that is presumptively not charged to the People"]; People v Young, 110 AD3d 1107, 1108 [2d Dept 2013] [any post-readiness period of an adjournment in excess of that actually requested by the People is excluded]). However, where, as was the case here, the People had no firm return date for the witness and no knowledge of his medical condition, the People did not have a reasonable basis for their specific requests (see People v Colvil, 50 Misc 3d 1204[A], *2 [Crim Ct, NY County 2015] [where there was " 'no known return date' " for the witness, there was no reason to believe that the adjournment dates requested by the People were reasonably based on when the witness would be available]). Accordingly, the court finds that the People are chargeable with the [*5]time that elapsed from July 16, 2024 to January 13, 2025, for a total of 181 days.
On January 13, 2025, the defense filed and served the instant motion for dismissal on speedy trial grounds.
The one-day period from January 13, 2025 to January 14, 2025, is excludable as a period of motion practice (see CPL § 30.30[4][a]).
January 14, 2025 — March 4, 2025 (0 days chargeable)
As stated above, on January 13, 2025, the defendant filed the instant motion to dismiss. On January 14, 2025, a motion schedule was set and the matter was adjourned to March 4, 2025, for decision.
This period is excludable as an adjournment for motion practice and the time during which a motion is under consideration by the court (see CPL § 30.30[4][a]; see also People v Shannon, 143 AD2d 572, 572-573 [1st Dept 1988] [time while speedy trial motion is under consideration by the court is excludable]).

 Conclusion
In total, the People are charged with 291 days which exceeds the statutory time limit provided by CPL section 30.30(1)(a).
Accordingly, the defendant's motion to dismiss the indictment on speedy trial grounds is GRANTED. 
In accordance with CPL section 160.50(1) and (3)(b), the sealing of this indictment is stayed for 30 days from the date hereof.
This constitutes the Decision and Order of the court.
Dated: March 4, 2025
Brooklyn, NY
Hon. Joanne D. Quiñones
Justice of the Supreme Court